RATTET PASTERNAK, LLP
Proposed Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
JONATHAN S. PASTERNAK, ESQ.
ELAN A. GERSHONI, ESQ.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:
                                                   Chapter 11

AUG FUNDING, LLC                           Case No. 11- 46167

                        Debtor.
------------------------------------------------------------X

# DECLARATION OF RICHARD RUDY
# PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4

RICHARD RUDY, declares under penalties of perjury:

1.      AUG Funding, LLC ("AUG" or the "Debtor") is an entity wholly owned by JPS Loan Holdings I, LLC ("JPS"), which is wholly owned by GEROVA Asset Backed Holdings, LP ("GEROVA Holdings"), of which GEROVA Financial Group, Ltd. ("GEROVA Financial") owns a controlling 99% interest. GEROVA Financial has assigned management of the Debtor to me. As such, I am familiar with the Debtor's operations, businesses and financial affairs.

2.      I submit this declaration pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1007-4 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules").

**Local Rule 1007-4(a)(i)**

3.      The Debtor is not a small business debtor within the meaning of Bankruptcy Code §101(51D).

**Local Rule 1007-4(a)(ii)**

4.      The Debtor was created in November of 2005 to lend funds to St. Augustine

Hotel, LLC ("SAH") for the acquisition and conversion of the St. Augustine Hotel, a 13,000 square foot boutique hotel located at 347 Washington Avenue, Miami Beach, Florida (the "Hotel"), into luxury condominiums and acquisition of a vacant lot adjacent to the Hotel located at 335 Washington Avenue (the "Lot", with the Hotel, the "Property").

5. In November of 2005, SAH acquired the Property primarily with funds loaned by AUG which was secured by a mortgage security agreement. Ultimately, the Hotel was not converted, and SAH defaulted. Thereafter, the Debtor foreclosed on the mortgage to SAH and obtained title to the Property in May, 2007.

6. Since the Debtor's acquisition of the Property in 2007, it endeavored to sell the Property, without any success, and continued to operate the Hotel instead.

7. On or about May 7, 2008, the Debtor executed and delivered a promissory note to Stonegate Bank ("Stonegate") in the original principal amount of $2,000,000.00, as extended by letter agreements dated April 7, 2009, November 4, 2009, December 9, 2009, March 17, 2010 and June 18, 2010 (the "Note").

8. However, throughout 2010, the Hotel continued to underperform, and in January, 2011, the Debtor engaged Palisades ("Palisades"), a hotel operator who specializes in "boutique" hotel operations to manage the Property.

9. Although the Debtor continued to diligently to seek to re-finance its obligation to the Lender, but was unable to do so and eventually the Debtor defaulted on its obligations to the Lender.

10. Upon information and belief, on or about September 13, 2010, the Lender assigned its interest in the Renewed Note and mortgage to EWE Loan No. 4, LLC ("EWE").

11. On October 14, 2010, EWE instituted a foreclosure proceeding against the Debtor in the 11th Circuit Court of Florida, Miami-Dade County, captioned *EWE Loan No. 4, LLC v.*

*AUG Funding, LLC et al.*, Case Number: 10-55405CA15 (the "Foreclosure Proceeding").

12. As of the Filing Date, EWE asserts that the Debtor is indebted in the approximate principal sum of $2,375,000, with EWE enjoying a $3,725,000 equity cushion in the Property.

13. The Debtor believes that it will secure construction funding in the next 90 to 120 days, but that the legal proceedings with EWE caused potential investors to hold off imminent commitments.

14. By this Chapter 11 filing, the Debtor hopes to refinance or restructure its mortgage obligations with EWE either through a consensual or otherwise confirmed chapter 11 plan.

**Local Rule 1007-4(a)(iii)**

15. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

**Local Rule 1007-4(a)(iv)**

16. Upon information and belief, no committee or professionals were employed prior to the filing of the Order for relief.

**Local Rule 1007-4(a)(v)**

17. A list of the holders of the 20 largest general unsecured claims, excluding insiders, is annexed hereto as **Exhibit "A"**.

**Local Rule 1007-4(a)(vi)**

18. A list of the holders of the 5 largest secured claims, excluding insiders, is annexed hereto as **Exhibit "B"**.

**Local Rule 1007-4(a)(vii)**

19. A summary of the Debtor's estimated assets and liabilities is annexed hereto as **Exhibit "C"**.

**Local Rule 1007-4(a)(viii)**

20. There are no publicly held securities of the Debtor.

**Local Rule 1007-4(a)(ix)**

21. Pursuant to the Order Appointing Receiver entered by Circuit Judge Joseph P. Farnia, in the 11th Circuit Court for Miami-Dade County entered on May 25, 2011 in the Foreclosure Proceeding, Mac Easton was appointed receiver (the "Receiver") of the Property.

**Local Rule 1007-4(a)(x)**

22. The Debtor's sole substantial asset is the Property, described above.

**Local Rule 1007-4(a)(xi)**

23. The Debtor's sole substantial asset is the Property.

24. Substantially all of the Debtor's books and records are located at its primary office located at 165 Remsen Street, Brooklyn, New York.

**Local Rule 1007-4(a)(xii)**

25. The following actions or proceedings are pending against the Debtor:

> *EWE Loan No. 4, LLC v. AUG Funding, LLC et al.*, Case Number: 10-55405CA15 (the "Foreclosure Proceeding") in the 11th Circuit Court of Florida, Miami-Dade County

**Local Rule 1007-4(a)(xiii)**

26. The Debtor's senior management consists Net Five's executives, Greg Laubach, President and CEO, Paul Rohan, Managing Director, Eric Halter, Chief Operating Officer, David Zorn, Chief Financial Officer and Richard Rudy, Asset Manager.[1]

**Local Rule 1007-4(a)(xiv) and (xv)**

27. The Debtor's estimated payroll to employees for the thirty (30) day period

---

[1] Net Five, of which GEROVA Financial the 99% interest holder of the Debtor, and Planet Five Development Group, LLC ("Planet Five") are the 50% members, is the manager of the Property pursuant to a management agreement that it entered into with GEROVA Financial in June of 2010.

following the Chapter 11 petition is $0.00.

28. The estimated amount to be paid for services to its officers and directors for the thirty (30) day period following the filing of the Chapter 11 petition is $0.00.

**Local Rule 1007-4(a)(xvi)**

29. A 30-day budget is annexed hereto as **Exhibit "D"**.

**Local Rule 9077-1**

30. Contemporaneously with this Chapter 11 filing, the Debtor expects to file a Motion for entry of an order seeking authority to use the cash collateral of EWE pursuant to Bankruptcy Code Section 363(C)(2) and granting adequate protection therefor (the "Cash Collateral Motion"). The Cash Collateral Motion also seeking entry of an order scheduling a hearing on shortened notice to consider interim relief on the Cash Collateral Motion. The relief sought in the Cash Collateral Motion is immediately necessary to enable the Debtor to operate effectively as a debtor-in possession following the commencement of its chapter 11 case.

31. I have reviewed the Cash Collateral Motion and the facts set forth there in are true and correct to the best of my knowledge, information and belief.

32. I submit that the relief request in the Cash Collateral Motion should be heard and determined on an expedited basis in order to allow the Debtor to continue its normal business operations without any interruption, which interruption that could severally detriment the Debtor's ability to successfully reorganize.

33. Without immediate relief from the Court authorizing the Debtor's use of cash collateral of EWE, the Debtor's would be unable to conducts its normal business operations, thereby crippling the Debtor's ongoing operations and jeopardizing its reorganization efforts.

34. Thus, I believe that good cause exists to have a hearing on the Cash Collateral Motion which typically requires a minimum of twenty (20) days notice as provided for in

Federal Rule of Bankruptcy Procedure 2002.

## CONCLUSION

35. The Debtor believes it is in the best interests of all of it creditors that it be afforded an opportunity to refinance and reorganize its obligations in Chapter 11.

36. The needs and interests of the Debtor and its creditors will best be served by the Debtor's possession of its assets and management of its affairs as a Debtor-in-Possession under Chapter 11 until confirmation of a reorganization plan.

37. Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

*/s/ Richard Rudy*_____
Richard Rudy, VP of the Manager of the Sole Member